**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cr-20204-JTF-1 |
| | ) | |
| CLAIBON BURRUS, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Claibon Burrus's Motion to Suppress, filed on December 22, 2022. (ECF No. 40.) The United States filed its Response on January 5, 2023. (ECF No. 40.) The Motion was referred to Magistrate Judge Annie T. Christoff on January 9, 2023. (ECF No. 43.) The Magistrate Judge entered a Report and Recommendation ("R & R") on May 3, 2023. (ECF No. 50.) Defendant filed his Objections on May 17, 2023. (ECF No. 51.) The United States filed a Reply on May 31, 2023. (ECF No. 52.) For the reasons provided herein, the Court **ADOPTS** the Magistrate Judge's R & R, and **DENIES** Defendant's Motion to Suppress.

## LEGAL STANDARD

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. 28 U.S.C. § 636(b)(1)(A). Regarding those excepted dispositive motions, magistrate judges may still hear and submit to the district court proposed findings of fact and recommendations for

disposition.  28 U.S.C. § 636(b)(1)(B).  Upon hearing a pending matter, "[T]he magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact."  Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003).  Any party who disagrees with a magistrate's proposed findings and recommendation may file written objections to the report and recommendation.  Fed. R. Civ. P. 72(b)(2).

"The standard of review that is applied by the district court depends on the nature of the matter considered by the magistrate judge."  *See Baker*, 67 F. App'x at 310 (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures.  A district court must review dispositive motions under the *de novo* standard.").  Motions to suppress evidence are among the motions in criminal cases that are subject to *de novo* review.  *See* 28 U.S.C. § 636 (b)(1)(A); *U.S. Fid. & Guarantee Co. v. Thomas Solvent Co.,* 955 F.2d 1085, 1088 (6th Cir. 1992).  Upon review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge.  *Brown v. Bd. of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1).  The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions."  *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015).  A district judge should adopt the findings and rulings of the magistrate judge to which no specific objection is filed.  *Brown*, 47 F. Supp. 3d at 674.  The district court is not required to review "a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## **FACTUAL OBJECTIONS**

Objection No. 1: Date Warrant Issued on 3038 Brookdale Street

In the R & R, the Magistrate Judge sets forth proposed findings of fact.  (ECF No. 50, 1-8.)  Defendant has one objection to the proposed findings of fact — Sergeant Overly did not apply for the warrant on October 10, 2021, but on January 15, 2021.  (ECF No. 51, 2.) In the R & R, the Magistrate Judge did state that Sergeant Overly applied for the warrant on October 10, 2021.  (ECF No. 50, 1.) However, this appears to the Court to be a typo because later in the facts, the Magistrate Judge clarified that Judge Campbell signed the warrant on January 15, 2021.  (*Id.* at 5.) The Magistrate Judge's analysis reflects January 15, 2021, to be the date that Sergeant Overly applied for the warrant and the date the warrant was issued.  (*Id.* at 4.)

Accordingly, the Court **ADOPTS** the Chief Magistrate Judge's proposed findings of fact and acknowledges that the date that Sergeant Overly applied for the search warrant on 3038 Brookdale Street was January 15, 2021.

## **LEGAL ANALYSIS**

The Chief Magistrate Judge recommends that the Court deny Defendant's Motion to Suppress because: (1) the information provided by the confidential source was properly considered as probable cause supporting the search warrant; (2) the observations made during the investigation indicated a series of drug transactions; (3) there is a nexus between the items seized and Defendant's home; (4) the items seized in Defendant's home supported probable cause for a search warrant of the storage unit; and (5) the good-faith exception to the exclusionary rule applies to the search warrant on Defendant's home and the storage units. (*See* ECF No. 50, 8-16.)

Defendant objects to the Magistrate Judge's findings by arguing: (1) the investigators corroborated the information by the confidential source in an untimely manner, rendering the

warrant stale; (2) investigators never verified any illegal activity during their investigation, but speculated there was drug activity based on Defendant's behavior; and (3) the dog used to search the storage units was unreliable.  (ECF No. 51, 2-5.)

## **LEGAL OBJECTIONS**

Objection No. 2: Staleness of the Information Provided by Confidential Informant

Defendant argues that the information provided by the confidential source was stale by the time an investigation was completed and the search warrant was issued. (*Id*. at 2.)  The investigation into the Defendant began when a confidential source told investigators that Defendant sold drugs to Jessica Oldaker who was found deceased due to a drug overdose on December 2, 2020.  (ECF No. 50, 2.)  Defendant points out that Jessica Oldaker died a month and a half prior to the search warrant being issued on January 15, 2021. (ECF No. 51, 2.) It is Defendant's position that because information goes stale quickly in the context of drug crimes, the warrant was issued too late.  (*Id*. at 3.)

The Government views Defendant's objections as a re-hashing of arguments thoroughly analyzed by the Magistrate Judge.  (ECF No. 52, 2.) However, for the first time, Defendant put forth the staleness argument in his objections, and the Court finds that it needs to be addressed. (ECF No. 51, 2.)

The Sixth Circuit holds that "[t]he standard of review for a staleness determination is the same as the standard for determining the sufficiency of an affidavit.  In sum, a magistrate must determine whether, under the totality of the circumstances, probable cause exists to issue the warrant." *U.S. v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001).  Whether context is stale depends on several other factors as well including the character of the crime, the criminal, the thing to be seized and the place to be searched.  *U.S. v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010).

Furthermore, the staleness test "is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *Greene,* 250 F.3d at 480.  In the context of drug crimes, information usually goes stale very quickly because drugs are sold in a prompt fashion.  *Id.* However, evidence of ongoing criminal activity will generally defeat a claim of staleness.  *Id.*

 Here, the Court does not find that the information provided in the affidavit rendered the warrant stale.  Based on the observations made by detectives during their investigation, there was evidence of ongoing criminal activity by Defendant. Detectives observed Defendant leave his home, drive to various locations where his interactions with people were indicative of drug trafficking and return home. (ECF No. 50, 3-4.) Under the totality of the circumstances, it was reasonable for detectives to believe that Defendant was storing narcotics and/or the proceeds of narcotics sales in his home.  Sergeant Overly and Detective Atkins began their surveillance of Defendant and his residence on January 11, 2021. (*Id*. at 3.) The investigation ended on January 13, 2021.  (*Id*. at 4.)  The search warrant on 3038 Brookdale was issued on January 15, 2021, and it was executed on January 19, 2021.  (*Id*. at 5.) Based on this timeline, detectives moved swiftly to ensure that evidence would not become stale, especially given the evidence involved drugs stored in Defendant's home.

Although a month and a half lapsed between the time of Jessica Oldaker's death and the issuance of the search warrant, there is not a defined date as to when the confidential source came forth with information that Defendant sold drugs to Oldaker.  Neither the affidavit nor the facts indicate the exact date as to when the confidential source provided information about Defendant. However, based on the detailed affidavit, detectives seemingly worked as quickly as possible to find where Defendant lived so that they could began surveillance on Defendant's home in order to corroborate the information provided by the confidential source.  The observations revealed

evidence of ongoing criminal activity, and ultimately provided sufficient probable cause to issue the warrant.  Thus, the Court does not find that the information provided in the affidavit rendered the search warrant stale.

Accordingly, upon *de novo* review, the Court **DENIES** Defendant's objection that the warrant was stale and **ADOPTS** the Magistrate Judge's finding that the warrant was supported by probable cause.

Objection No. 3: Detectives' Investigation

Defendant claims that the results of the investigation do not "verify any illegal activity." (ECF No. 51, 3.) Defendant alleges that because the investigators did not actually see drugs, seize drugs, or stop or arrest anyone that they observed meet with Defendant, there is no probable cause for the warrant (*Id*.) As a result, the Defendant believes nothing presented by the investigators in the affidavit places a high probability of drugs being in the home. (*Id*.)  Regardless of whether the results of the investigation provided probable cause for the warrant, the Defendant argues that the good-faith exception does not apply here.  (*Id*. at 4.)

In the R & R, the Magistrate Judge explained that the interactions observed by investigators must be judged under the totality of the circumstances.  (ECF No. 50, 12. ) Defendant's history of possession of narcotics, communications with others known to possess narcotics, and the information provided by the confidential source indicate drug activity.  (*Id*.) Instead of relying completely on the information provided by the confidential source, Sergeant Overly and Detective Atkins began surveillance of 3038 Brooksdale Drive to determine whether there was probable cause to seek a search warrant.  They observed Defendant leave his home, drive a silver Infiniti to a Marathon gas station, or McDonald's, meet with individuals, conduct some sort of exchange with them, and return home.  (*Id*.) These observations support the confidential source's allegations

6

that Defendant lived at 3038 Brookdale Drive, drove a black Mercedes or silver Infinity, and often met with narcotics customers on Perkins Road, particularly a McDonald's and Marathon gas station. (*See id* at 2.)

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion,' and is found to exist when there is 'a 'fair probability' that evidence of a crime will be located on the premises of the proposed search.'" *Jackson*, 470 F.3d at 306 (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)).

The standard of review for determining the sufficiency of the affidavit "'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *Rodriguez-Suazo*, 346 F.3d at 643 (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "[T]he magistrate's probable cause determination should be afforded great deference." *Id*. Usually, "[c]ourts have upheld residential searches where a defendant drives directly from his home to a drug sale, sells drugs immediately after leaving his house, or returns home after collecting drug proceeds." *United States v. Dawson*, No. 21-4142, 2022 WL 4245698, at *2 (6th Cir. 2022) (citing *United States v. White*, 990 F.3d 488, 492 (6th Cir. 2021)).

The Court agrees with the Magistrate Judge that under the totality of the circumstances, Defendant was likely engaged in hand-to-hand drug transactions, and stored narcotics in his home.

It was not necessary for investigators to actually see Defendant with drugs in his hand, nor was it necessary for investigators to conduct controlled drug purchases from Defendant. It was enough that detectives observed Defendant leave his home,  engage in transactions indicative of drug sales, and return home.  *See Dawson*, No. 21-4142, 2022 WL 4245698, at *2.

As a final matter on the probable cause issue, the Court finds the Defendant's generalized allegation that the good-faith exception does not apply here inadequate.  Defendant attempts to negate probable cause by claiming that the good-faith exception does not apply here.  (ECF No. 51, 4.) Defendant attempted this same argument in his Motion to Suppress and those arguments were considered by the Magistrate Judge.  (ECF No. 50, 14.) Given the generalized objection on this point, and the fact the good faith exception was thoroughly analyzed by the Magistrate Judge, the Court finds that Defendant's Objection is Denied.

Accordingly, upon *de novo* review the Court **DENIES** Defendant's objections, and **ADOPTS** the Magistrate Judge's finding that the results of the detectives' investigation provided probable cause for the search warrant on 3038 Brookdale Dr. and the good-faith exception applies to the warrant as well.

Objection No. 4: Unreliability of K-9

Defendant objects to the reliability of the dog used during the execution of the search warrants for the storage units.  (ECF No. 51, 5.) Defendant argues that the dog is unreliable because it made a false alert on a third of the units to be searched, specifically unit G22.  (*Id*.)

The R & R explained that there was a positive alert to narcotics by Rocky, a properly trained and certified narcotics dog, to storage units F8 and F10.  (ECF No. 50, 18.)  The affidavit also connects Defendant to units F8 and F10.  (*Id*.) The affidavit seeking the search warrant for the storage units describes that Defendant paid monthly rent in cash for both units and Defendant

communicated with associates the day of and after his arrest, instructing them to hide additional evidence in the units. (*Id*.) When the dog was taken to the storage units to conduct a free air sniff of the storage units, he not only gave an alert to F10, but to G22 as well.  No evidence was recovered from G22 and unit G22 was not considered for purposes of suppression.  And, as Burrus conceded during the hearing, the issuing Judge would not have known about the false alert at the time the warrants were issued.  Thus, Rocky's error is irrelevant on the question of whether probable cause supported issuance of the warrants.  (*Id*. at 19 fn. 7.)

From unit F8, officers recovered a hydraulic press (described by the United States as commonly used to prepare large quantities of narcotics for packaging), two cell phones, a rifle, and ammunition.  (*Id*. at 7-8.) In unit F10, officers recovered six firearms, three digital scales, cocaine, fentanyl, heroin, methamphetamine, and various pills.  (*Id*. at 8.) The false alert by Rocky of G22 does not matter because no evidence was found in that storage unit.  There was sufficient probable cause in the affidavit for a search warrant on storage units F8 and F10.

Accordingly, upon *de novo* review, the Court **DENIES** Defendant's objection and **ADOPTS** the Magistrate Judge's finding that that the dog used in the search of the storage units was reliable.

## CONCLUSION

The Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation, and **DENIES** Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 22nd day of June, 2023.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE